[File No. 6676.]

VILLAGE OF DAZEY, a Public Corporation, et al., Appellants, v. BARNES COUNTY, a Public Corporation, et al., Respondents.

(298 N. W. 13.)

Opinion filed May 8, 1941.

*Sproul & Sad,* for appellants.

*William R. Pearce* and *Ritchie & Ritchie,* for respondents.

BURKE, J. In this action the village of Dazey sought judgment, decreeing that the sale by the defendant Barnes county of a building located on lot thirteen (13) in block eighteen (18) of the original townsite of the village of Dazey to the defendant The Central Finance Corporation was null and void, and enjoining the defendant Central Finance Corporation from removing the building from the site upon which it was located. Upon the trial of the case in the district court all of the allegations of facts upon which plaintiff based its right to relief were stipulated by the parties, except the allegation as to the value of the building. Testimony was offered by the plaintiff upon the issue of value and at the close of plaintiff's case, the trial judge granted defendant's motion to dismiss the action. Judgment of dismissal was thereafter entered. Plaintiff has appealed from the judgment and has demanded a trial de novo in this court.

Prior to 1931, said lot thirteen and the building located thereon had been the property of the Security Bank of Dazey. When the bank closed, at a time not disclosed by the record, this property passed into the hands of L. R. Baird as receiver of the bank.

Taxes for the year 1931 on the entire property, which was assessed as real property, were not paid and the property was sold to the county at tax sale. Thereafter no further taxes upon the described tract were paid and the amount due for taxes for the year 1931 and

subsequent years was in July 1939 the sum of $758.34. This amount included all taxes levied for state, county, village and school district purposes. On July 6, 1939, the board of county commissioners of Barnes county adopted the following resolution: "That the county acquire this property on account of unpaid taxes and offer the building for sale and thereby receive some revenue from the same."

Subsequent to the adoption of this resolution the county for the sum of $10 procured a quitclaim deed of the property from the receiver. Upon receiving the deed the county offered the building located upon said lot thirteen for sale at public auction. Notice of the sale and of the time and place for receiving bids was published once each week for three successive weeks in the official newspaper of Barnes county. The bid of the defendant Central Finance Corporation in the sum of $295 was the only bid received and that bid was accepted.

Thereafter upon September 11, 1939, the county commissioners resolved as follows: "That since this sale of the above said property was for cash, namely the building located on said lot, and when it appeared that the check was drawn it was found that there was not sufficient funds in said bank in the account of the drawer of the check to pay the same, and the bank has been called several times since and still there were not sufficient funds to pay the same, and it would not be for the best interests of the county to enter into the sale with the Central Finance Corporation, a corporation, for said building, and that said agreement to sell has not been accompanied by any such tender of the purchase price or any part thereof that the sale be cancelled and that the County Auditor is instructed to refuse to accept any tender or payment hereafter made purporting to be a tender or payment under any alleged sale relating to the herein described building."

Early in October 1939, without again advertising said property for sale, the county commissioners accepted payment of the amount bid at the advertised sale and executed and delivered a bill of sale of said building to the defendant Central Finance Corporation.

Testimony offered in behalf of the plaintiff was that the building was worth $1,000. This testimony was not contradicted. Plaintiff alleged that if the sale is permitted to stand, it will realize from the

proceeds of the sale less than half of the village taxes which were levied against said lot thirteen, and will be damaged accordingly.

The validity of the sale is attacked upon the ground that the methods by which the county attempted to acquire title to the property and those by which it attempted to sell the building were not in accordance with the procedure prescribed by statute for the acquisition and sale of tax titles by a county and that both the receiver's deed to the county and the county's bill of sale to the General Finance Corporation are therefore void.

It is conceded that in July 1939, the county was the owner of a valid certificate of tax sale to the property in question and that sufficient time had elapsed since the issuance of the certificate of sale so that the county might have proceeded to perfect its title by giving notice of the expiration of the period of redemption and securing tax deed. Instead of giving the notice prescribed by statute the county commissioners secured a quitclaim deed from the holder of the record title. This was a proper method of perfecting the county's title. The notice is for the protection of persons who have a right to redeem and the county commissioners could, for the sake of economy, expedition and clear title, accept a conveyance in lieu of giving notice of expiration of redemption. The property thus acquired, however, is property acquired through tax proceedings. When sold, it must be sold in the manner prescribed by law for the sale of such property. 61 C. J. 1235; Shook v. Baird, 91 Cal. App. 549, 267 P. 340.

Plaintiff contends that such property may be sold only pursuant to the provisions of § 2202, Compiled Laws of 1913, as amended and re-enacted by chapter 235, Laws of North Dakota 1939, while defendant asserts that it may be sold either under chapter 235, supra, or under § 3274, Compiled Laws of North Dakota 1913, as amended by chapter 123, Laws of North Dakota 1937. It was stipulated by the parties that the county commissioners did not pursue the method prescribed by chapter 235. The defendants do contend, however, that the provisions of chapter 123 were followed.

We do not consider it necessary to set forth these statutes at length. Chapter 123 relates to property which a county may have acquired "through purchase, forfeiture, or operation of law." Chapter 235 relates solely and exclusively to property obtained by tax sale pro-

ceedings. "It is sufficient unto itself and provides a method of sale wholly different from that contemplated by § 3274, supra." Cary v. Morton County, 57 N. D. 700, 223 N. W. 928, 930.

Even though the general provisions of chapter 123, supra, might be broad enough, in the absence of specific legislation to warrant a construction that it related to property acquired through tax proceedings, nevertheless where there is a specific statute upon the subject, that statute is controlling. State ex rel. Donnelly v. Hobe, 106 Wis. 411, 82 N. W. 336; State v. Washburn Waterworks Co. 182 Wis. 287, 196 N. W. 537; Mancuso v. State, 123 Neb 204, 242 N. W. 430; State v. Mann, 129 Neb. 195, 261 N. W. 173. See State ex rel. Bismarck Tribune Co. v. Steen, 60 N. D. 627, 236 N. W. 251.

Chapter 235, supra, therefore applies. Its provisions should have been followed by the board of county commissioners in the sale of the building located on said lot thirteen. That they did not pursue the procedure required by chapter 235, is stipulated by the parties and the sale is accordingly void. 61 C. J. 1235; Shook v. Baird, 91 Cal. App. 549, 267 P. 340, supra; Snidow v. Montana Home for Aged, 88 Mont. 337, 292 P. 722; Crabtree v. Sorocco County Comrs. 38 N. M. 233, 31 P. (2d) 249; Pimm v. Waldron, 118 Okla. 5, 244 P. 37.

It was urged by the defendants that plaintiff did not have sufficient interest in the property to maintain this action and that the village was not entitled to injunctive relief because it had an adequate remedy at law by suit against the county for damages. Neither of these contentions can be sustained. The village had a special interest in this property by virtue of the village taxes which had been levied against it. Under the provisions of chapter 235, supra, that interest is sufficient to entitle it to participate in the hearing to fix the minimum price at which property acquired at tax sale may be sold and to appeal to the district court from the order of the county board in the event it was dissatisfied with the price fixed. If, as appears from the evidence in this case, the property has been improvidently and illegally sold for a sum far below its actual value and grossly inadequate to pay the taxes due, the interest of the village is destroyed proportionately and the resulting deficiency would have to be made up by levying new taxes upon the other property. It cannot be said that a suit at law

against the county to recoup the damages sustained is an adequate remedy. Any judgment rendered in such an action would have to be paid through the levy of an additional tax, to the payment of which the taxpayers of the village would be required to contribute their proportionate share. If the defendant be permitted to remove this building, the means through which the village could collect its share of delinquent taxes will be irreparably destroyed. The village has sufficient interest to maintain the action. See Red River Valley Brick Co. v. Grand Forks, 27 N. D. 8, 145 N. W. 725. The injury with which the village is threatened would be irreparable and it has no adequate remedy at law. Injunction is therefore the appropriate remedy. See Snidow v. Montana Home for Aged, 88 Mont. 337, 292 P. 722, supra.

The plaintiff was entitled to judgment that the sale was void and to the injunction prayed for. The judgment of the district court is therefore reversed and judgment ordered in plaintiff's favor.

BURR, Ch. J., and MORRIS, CHRISTIANSON, and NUESSLE, JJ., concur.